# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## MIAMI DIVISION

## CASE NO.

PINES NURSING HOME (77), INC., a
Florida corporation, d/b/a PINES NURSING
HOME, individually, and on behalf of all others
similarly situated,

   Plaintiff,

vs.

REHABCARE GROUP, INC., a Delaware
corporation, and CANNON & ASSOCIATES, LLC, a
Delaware limited liability corporation, d/b/a Polaris
Group,

   Defendants.

**CLASS ACTION**

_____/

**Complaint for Violations of the Junk Fax Prevention Act**
**(47 U.S.C. § 227 and 47 C.F.R. § 64.1200); Demand for Jury Trial**

  Plaintiff Pines Nursing Home (77), Inc., d/b/a Pines Nursing Home ("Plaintiff"), on

behalf of itself and all others similarly situated, sues Defendants RehabCare Group, Inc., and

Cannon & Associates, LLC ("Defendants"), and avers:

### Introduction

  1. More than two decades ago the Telephone Consumer Protection Act of 1991, 47

U.S.C. § 227 ("TCPA"), was enacted into law.  The law responded to countless complaints by

American consumers and businesses about the cost, disruption and nuisance imposed by junk

faxes.  The law prohibited the transmission of facsimile advertising without the prior permission

of the recipient.  Despite its passage, consumers and businesses continued to be besieged with

junk faxes.  In 2005 Congress responded by strengthening the law through the Junk Fax

Prevention Act of 2005 ("JFPA" or the "Act").[1]  As amended, the Act requires an advertiser to include on its faxed advertisements a clear and conspicuous notice that discloses to recipients their right to stop future faxes and explains how to exercise that right.

2.      Plaintiff brings this class action to recover damages for and to enjoin junk faxing by Defendants in violation of the JFPA and the regulations of the Federal Communications Commission promulgated under the JFPA.  Defendants have, within four years preceding the filing of this action, transmitted facsimile advertisements in direct violation of the JFPA and FCC regulations.[2]  Defendants' violations include, but are not limited to, the facsimile transmission of advertisements on July 15, 2011, July 20, 2011, July 27, 2011, August 3, 2011, August 10, 2011, August 17, 2011, July 31, 2012, and January 2, 2013, to Plaintiff's telephone facsimile machine via Plaintiff's facsimile telephone number, true and correct copies of which are attached as Exhibits 1 through 8, respectively.

3.      **Subject Jurisdiction, Standing and Venue.**  This Court has subject matter jurisdiction over this matter by operation of 28 U.S.C. § 1331 because this action arises under the laws of the United States.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 747, 181 L. Ed. 2d 881 (2012).  Plaintiff has standing to seek relief in this Court because § (b)(3) of the Act authorizes commencement of an action to obtain statutory damages in the minimum amount of $500 for each violation of the JFPA and/or FCC regulations, to obtain injunctive relief, or for both such actions.  Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants sent facsimile advertisements in violation of the JFPA and FCC regulations to this judicial district, including to Plaintiff.

---

[1]      Unless otherwise noted, all statutory references are to this statute in effect since 2005.

[2]      The statute of limitations for this action is the four-year limitations period provided in 28 U.S.C. § 1658.

2

4. **Personal Jurisdiction**. This Court has personal jurisdiction over Defendants because they regularly conduct business within the state of Florida, because Defendants intentionally directed the facsimile advertisements to recipients within the state of Florida, and because Defendants committed at least some of their violations of federal law within the state of Florida.

### Parties

5. **Individual Plaintiff/Class Representative**. Plaintiff Pines Nursing Home (77), Inc., is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of Florida, doing business as Pines Nursing Home within this judicial district. Plaintiff is, and at all times relevant hereto was, the subscriber of the telephone number (305-893-2519) to which the facsimile advertisements, including Exhibits 1 through 8, were sent by Defendants.

6. **Defendant RehabCare Group, Inc.** Plaintiff is informed and believes, and upon such information and belief avers, that Defendant RehabCare Group, Inc. ("RehabCare"), is, and at all times relevant hereto was, a corporation organized and existing under the laws of the state of Delaware and having its principal place of business in Louisville, Kentucky. Plaintiff is further informed and believes, and upon such information and belief avers, that at all times relevant to this action RehabCare was the registrant of the web site (www.polaris-group.com) advertised and promoted in Defendants' facsimile advertisements.

7. **Defendant Cannon & Associates, LLC.** Plaintiff is informed and believes, and upon such information and belief avers, that Defendant Cannon & Associates, LLC ("Cannon"), is, and at all times relevant hereto was, a limited liability corporation organized and existing

under the laws of the state of Delaware, doing business as the Polaris Group, and having its principal place of business in Louisville, Kentucky, at the same address as RehabCare. Defendant Cannon is an indirect subsidiary of RehabCare. As used herein, "Defendants" refers to RehabCare and Cannon.

8.      **Agency.** Plaintiff is informed and believes, and upon such information and belief avers, that at all times relevant hereto each Defendant was and now is the agent and/or representative of each other Defendant, and in doing the acts averred herein was acting within the scope of such agency and/or representation.

### The JFPA's Prohibition Against Junk Faxing

9.      By the early 1990s advertisers had exploited facsimile telephone technology to blanket the country with junk fax advertisements. This practice imposed tremendous disruption, annoyance and cost on American consumers and businesses. Among other things, junk faxes tie up recipients' telephone lines and facsimile machines, misappropriate and convert recipients' fax paper and toner, and require recipients to sort through faxes to separate legitimate faxes from junk faxes, and to discard the latter. Congress responded to the problem by passing the TCPA in 1991. The law was enacted to eradicate junk faxes and staunch "the explosive growth in unsolicited facsimile advertising, or 'junk fax.'" H.R. Rep. No. 102-317 (1991).

10.      In the decade following the law's enactment, however, American consumers and businesses continued to be "besieged" by junk faxes because advertisers refused to honor requests by recipients to stop. FCC, Report and Order on Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003). Congress responded by strengthening the law through the JFPA. The JFPA, for the first time, required

advertisers to disclose in their faxes that recipients have the right to stop future faxes and to explain how they can exercise that right (hereinafter collectively the "Opt-Out Notice Requirements").  § (b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2); 47 C.F.R. § 64.1200(a)(4)(iii)-(vi).

### Defendants' Junk Fax Programs

11.    Within the past four years Defendants RehabCare and Cannon have promoted their goods and services by facsimile advertising campaigns.  Among other things, Defendants have blasted fax advertisements to promote the commercial availability and quality of Defendants' goods and services, including  "Public Seminars," "Medicare training workshops," Medicare and Medicaid program compliance services, and Defendants' website, www.polaris-group.com, and goods and services advertised on that website.  The website is interactive and invites visitors to purchase Defendants' goods and services.  Examples of these faxes are attached as Exhibits 1 through 8 to this Complaint.  Plaintiff is informed and believes, and upon such information and belief avers, that these faxes, including Exhibits 1 through 8, were designed as, intended as, and constituted advertisements under the JFPA within their four corners and as part of Defendants' overall marketing and promotional activities.

12.    RehabCare and Cannon are each senders of facsimile advertisements at issue because the advertisements were sent on their behalf and because the faxes advertised or promoted Defendants' goods and services.

13.    Plaintiff is informed and believes, and upon such information and belief avers, that each Defendant was actively involved in the preparation of the content of the facsimile advertisements at issue and in their facsimile transmission and received benefits from the advertisements in the form of sales revenue and name recognition and promotion.  RehabCare

and Cannon therefore are vicariously liable for each other's acts or omissions relating to or in connection with the facsimile advertisements.

14.     Plaintiff did not give Defendants prior express invitation or permission as defined in the JFPA (§ 227(a)(5)) to send Exhibits 1 through 8 or any other facsimile advertisements. Plaintiff is informed and believes, and upon such information and belief avers, that Defendants blasted Exhibits 1 through 8 and other facsimile advertisements without obtaining prior express invitation or permission from other recipients.  In sending these faxes Defendants also failed to include the disclosures required by the Opt-Out Notice Requirements, in further violation of the JFPA and FCC regulations.

**Class Action Averments**

15.     **Statutory Reference**.  This action is properly maintainable as a class action because (a) all prerequisites of rule 23(a) are satisfied; (b) prosecution of separate actions by one or more individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes and would establish incompatible standards of conduct for Defendants, in the manner contemplated by rule 23(b)(1)(A); (c) Defendants have acted on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the classes as a whole, as contemplated by rule 23(b)(2); and (d) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, if any, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, as contemplated by rule 23(b)(3).

16.     **Class Definition.**  The Plaintiff Class consists of all persons and entities that were at the time subscribers of telephone numbers to which material was sent via facsimile transmission, commencing within four years preceding the filing of this action, which material discusses, describes, or promotes the property, goods or services of any Defendant, including, without limitation, Exhibits 1 through 8 to this Complaint ("Plaintiff Class").  Plaintiff reserves the right to amend the class definition following completion of class certification discovery.

17.     **Class Size/Impracticality of Joinder**.  Plaintiff is informed and believes, and upon such information and belief avers, that persons and entities in the Plaintiff Class are sufficiently numerous such that joinder of all members is impracticable due to the class's size and due to the relatively small potential monetary recovery for each class member, in comparison to the time and costs associated with joinder in the litigation on an individual basis.

18.     **Typicality**.  The claims of Plaintiff are typical of those held by members of each proposed class because all members of the proposed Plaintiff Class were sent faxed advertisements by Defendants, have claims under the same statute and FCC regulations, and are entitled to the same statutory damages.

19.     **Adequacy of Representation**.  The Plaintiff Class will be well represented by Plaintiff and Plaintiff's counsel.  Plaintiff appreciates the responsibilities of a class representative and understands the nature and significance of the claims made in this case.  Plaintiff can fairly and adequately represent and protect the interests of the classes because there is no conflict between its interests and the interests of other class members.  Proposed class counsel has the necessary resources, experience (including extensive experience in litigating claims under the JFPA) and ability to prosecute this case on a class action basis.

7

20.     **Common Questions of Law and Fact Are Predominant**.  Questions of law and fact common to the class predominate over questions affecting only individual class members.

A.     **Common Questions of Fact**.  This case presents numerous questions of fact that are common to all claims held by members of each class.  Plaintiff is informed and believes, and upon such information and belief avers, that the case arises out of a common nucleus of facts and that Defendants have engaged in the same general course of conduct vis-à-vis class members, and all class members' damages arise out of that conduct.

B.     **Common Questions of Law**.  This action presents numerous common questions of law, including, but not limited to:

(1)     whether the faxes at issue are advertisements within the ambit of the JFPA and FCC regulations implementing the Act;

(2)     Defendants' mode and method of obtaining the telephone numbers to which the facsimile advertisements were sent and whether that mode and method complied with the requirements of § (b)(1)(C)(ii) and FCC regulations;

(3)     whether Defendants complied with the Opt-Out Notice Requirements of the JFPA and FCC regulations, and the legal consequences of the failure to comply with those requirements;

(4)     what constitutes a knowing or willful violation of the JFPA within the meaning of § (b)(3);

(5)     whether Defendants committed knowing and/or willful violations

8

of the JFPA and/or FCC regulations;

(6)     whether damages should be increased on account of Defendants' knowing and/or willful violations of the Act and/or FCC regulations and, if so, by what amount; and

(7)     whether injunctive relief as prayed for in this Complaint should be entered.

21.     **Injunctive Relief Is Appropriate**.  Defendants have acted, and continue to act, on grounds that apply generally to class members, so that injunctive relief is appropriate with respect to the class as a whole.

22.     **Superiority of Class Adjudication**.  The action should be maintained as a class action because a class action is superior to other available methods for the fair and efficient adjudication of the controversy:

A.     Common questions of law and fact, including those identified in paragraph 20, predominate over questions affecting only individual members.

B.     Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

C.     Proof of the claims of Plaintiff will also prove the claims of the proposed classes without the need for separate or individualized proceedings and the statutory damages provided for in the JFPA are the same for all members of each proposed class, such that damages

can be calculated with mathematical certainty.

D.    Defendants have acted pursuant to common policies and practices in the same or similar manner with respect to all members of the proposed class.

E.    Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings in the event individual cases are brought.

F.    Most members of the Plaintiff Class are not likely to join or bring an individual action due to, among other reasons, the small amount to be recovered relative to the time, effort and expense necessary to join or bring an individual action. Because the statutory minimum damage is $500 per violation and the Act contains no provision authorizing an award of attorneys' fees to a successful plaintiff, individual action to remedy Defendants' violations of the Act and FCC regulations would be grossly uneconomical. As a practical matter, the claims of the vast majority of the proposed class are not likely to be redressed absent certification.

G.    Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to this action and, hence, subject to an order spreading the costs of litigation among class members in relationship to the benefits received.

H.    Class adjudication would serve to educate class members about their rights under federal law to stop unwanted junk faxes, a particularly important public purpose given Defendants' failure to notify recipients of their right to stop future junk faxes, in violation of the JFPA and FCC regulations.

23.    **Notice.** Plaintiff contemplates that notice be provided to all class members that can be identified through reasonable effort. Rule 23 requires, and the notice will concisely and

clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues and defenses; that a class member may enter an appearance through counsel if the member so desires; if the classes are certified under rule 23(b)(3), that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under rule 23(c)(3).

## Claim for Relief

### (Against Defendants RehabCare and Cannon for Violations of the JFPA and FCC Regulations by Plaintiff and the Plaintiff Class)

24.   Plaintiff and the proposed Plaintiff Class reassert the averments set forth in paragraphs 1 through 23, above.

25.   **Defendants' Violations of the Act and FCC Regulations.**  Within four years preceding the filing of this action, including, without limitation, on July 15, 2011, July 20, 2011, July 27, 2011, August 3, 2011, August 10, 2011, August 17, 2011, July 31, 2012, and January 2, 2013, Defendants RehabCare and Cannon violated the JFPA and FCC regulations by, among other things, sending unsolicited advertisements and/or advertisements that violate the Opt-Out Notice Requirements from telephone facsimile machines, computers, or other devices to telephone facsimile machines of Plaintiff and members of the Plaintiff Class, within the United States.  Defendants' facsimile advertisements inform recipients of the commercial availability and quality of Defendants' property, goods and services, including, without limitation, Defendants' training programs, workshops, consulting services, website, and goods and services offered for sale on Defendants' website.

26.     **Private Right of Action**.  Under § (b)(3), Plaintiff has a private right of action to bring this claim for damages and injunctive relief on behalf of itself and on behalf of the Plaintiff Class to redress Defendants' violations of the Act and FCC regulations.

27.     **Injunctive Relief**.  Plaintiff is entitled to have preliminary and permanent injunctions issue to: (1) prohibit Defendants, their employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with them, from committing further violations of the Act and FCC regulations, and thereby, among other things, prohibiting Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending any unsolicited advertisements via facsimile to any person or entity, or sending to any person or entity any advertisements via facsimile that do not comply with the Opt-Out Notice Requirements; (2) require Defendants to deliver to Plaintiff all records of facsimile advertisements sent commencing within four years preceding the filing of this action, including all content sent via facsimile, fax lists, and transmission records; (3) require Defendants to adopt ongoing educational, training and monitoring programs to ensure compliance with the JFPA and FCC regulations, and limiting facsimile advertising activity to personnel who have undergone such training; (4) require Defendants to provide written notice to all persons and entities to whom Defendants sent, via facsimile transmission, advertisements in violation the Act and/or FCC regulations, warning such persons and entities that the faxing of unsolicited advertisements or advertisements that do not comply with the Opt-Out Notice Requirements violates the JFPA and that they should not be led or encouraged in any way by Defendants' violations of the Act and/or FCC regulations to send advertisements of their own that violate the Act and/or FCC regulations; and (5) require Defendants to place conspicuously on the homepage of their websites the warnings contained in subsection 4 of this paragraph.

28.    **Damages**.  Plaintiff and members of the proposed Plaintiff Class are entitled to recover statutory damages in the minimum amount of $500 for each violation by Defendants of the JFPA and/or FCC regulations, as expressly authorized by § (b)(3)(B).  In addition, Plaintiff is informed and believes, and upon such information and belief avers, that Defendants committed their violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, also as authorized by § (b)(3)(B).

**Prayer for Relief**

WHEREFORE, Plaintiff and the Plaintiff Class pray for judgment against Defendants RehabCare and Cannon, and each of them:

1.    Certifying the class described in paragraph 16 of this Complaint;

2.    Appointing Plaintiff as representative for the Plaintiff Class and awarding Plaintiff an incentive award for its efforts as class representative;

3.    Appointing Plaintiff's counsel as counsel for the Plaintiff Class;

4.    Awarding of statutory damages in the minimum amount of $500 for each violation of the Act and/or FCC regulations and the trebling of such statutory damages, in an amount not less than $1,000,000, exclusive of interest and costs, according to proof;

5.    Entering the preliminary and permanent injunctions requested in paragraph 27 of this Complaint;

6.    Ordering payment of Plaintiff's costs of litigation, including, without limitation, costs of suit and attorneys' fees, spread among the members of the Plaintiff Class in relation to the benefits received by the class;

7.    Awarding pre-judgment interest;

8.    Awarding such other and further relief as the Court shall deem just and proper.

## Jury Demand

Under authority of Federal Rule of Civil Procedure 38, Plaintiff demands trial by jury on all issues triable of right by a jury.

Respectfully submitted


**/s/Frank F. Owen**
Frank F. Owen, Esq.
Florida Bar No. 702188
FFO@CastlePalms.com
Frank F. Owen & Associates, P.A.
1091 Ibis Avenue
Miami Springs, Florida 33166
Tel:  (954) 964-8000

and

**/s/Joel S. Magolnick**
Joel S. Magolnick
Florida Bar No. 776068
magolnick@mm-pa.com
Marko & Magolnick, P.A.
3001 SW 3rd Ave.
Miami, Florida 33129
Tel:  (305) 285-2000

Attorneys for Plaintiff Pines Nursing Home (77),
Inc., d/b/a/ Pines Nursing Home, and all others
similarly situated

7/15/11 8:51          8138865045          Pines Nursing Home          D 1/1

 **POLARIS GROUP** **PUBLIC SEMINARS** 

## Managing Medicare Revenue in Changing Times
### Strategies for Oct. 1, 2011 Changes
### Compliance, Reimbursement, & Trending Medicare Utilization Under RUG-IV

**OVERVIEW:**
Just as SNFs were starting to manage Medicare revenue under RUG-IV, CMS proposes significant changes effective Oct. 1, 2011. Staff must now implement different strategies for End of Therapy (EOT), Start of Therapy (SOT), and the new Change in Therapy (COT) MDS requirements. Combined with the new definition of Group Therapy and changes in rates; staff behaviors and systems must change to mitigate revenue loss. This training provides best practices for your daily MDS & Medicare operations, essential for success. How to maintain productivity and profitability is essential. This dynamic training reviews complicated COT and EOT scenarios, billing tips, analysis of your daily operations, as well as, financial and utilization trends under RUG-IV.

**This multi-speaker seminar will help you:**
- Prepare for and implement changes effective Oct 1 2011
- Retain/Improve Medicare Part A Revenue.
- Change behaviors to decrease need to complete and EOT or COT.
- Improve Accuracy of Submitted Claims.
- Learn RUG-IV Utilization Trends and anticipate changed under new rates.
- Mitigate Therapy Challenges

Hotel Information: (mention RehabCare Group Road Show for room discount)

To Be Determined....

### PLEASE LIST HOW MANY PEOPLE ARE ATTENDING:

| Ft. Lauderdale, FL – Sept. 13, 2011 | $99.00 per person | # of Attendees | |
|---|---|---|---|

For a list of other locations and hotel information, please visit our website: www.polaris-group.com

### PLEASE PRINT CLEARLY Fax back at 1-866-504-3087

| Attendee(s) Name(s): | | Title: | |
|---|---|---|---|

Email Address *Required*:

Facility:
Chain
Affiliation:

Phone:                                                          Fax:
Method of Payment:   ☐ Check   ☐ Visa   ☐ AMEX   ☐ MasterCard
Credit                                             *3-Digit        Exp.
Card #:                                            Code:          Date:

*Credit Card charges will appear on your Statement as "Polaris Group"*

Total Charges due:   $

Name (as it appears on card):

Billing Address

City:                                State:          Zip:

Signature:

Cancellation Policy: No cancellation or refunds upon receipt of handouts and call-in number via email or fax.

**Polaris Group 3030 N. Rocky Point Drive, Suite 240 Tampa, FL  33607**

To be removed from our fax list, please call 1-800-404-2972 and follow the prompts or fax to 1-813-886-6045.

## Exhibit 1
### 15

7/28/11 12:48          8138866845          Pines Nursing Home          □ 1/1

 POLARISGROUP   **PUBLIC SEMINARS**   

## Managing Medicare Revenue in Changing Times
### Strategies for Oct. 1, 2011 Changes
### Compliance, Reimbursement, & Trending Medicare Utilization Under RUG-IV

**OVERVIEW:**
Just as SNFs were starting to manage Medicare revenue under RUG-IV, CMS proposes significant changes effective Oct. 1, 2011. Staff must now implement different strategies for End of Therapy (EOT), Start of Therapy (SOT), and the new Change in Therapy (COT) MDS requirements. Combined with the new definition of Group Therapy and changes in rates; staff behaviors and systems must change to mitigate revenue loss. This training provides best practices for your daily MDS & Medicare operations, essential for success. How to maintain productivity and profitability is essential. This dynamic training reviews complicated COT and EOT scenarios, billing tips, analysis of your daily operations, as well as, financial and utilization trends under RUG-IV.

This multi-speaker seminar will help you:
- Prepare for and implement changes effective Oct 1 2011
- Retain/Improve Medicare Part A Revenue.
- Change behaviors to decrease need to complete and EOT or COT.
- Improve Accuracy of Submitted Claims.
- Learn RUG-IV Utilization Trends and anticipate changes under new rates.
- Mitigate Therapy Challenges

**Hotel Information:** (mention RehabCare Group Road Show for room discount)

To Be Determined....

### PLEASE LIST HOW MANY PEOPLE ARE ATTENDING:

| | $99.00 per person | # of Attendees | |
|---|---|---|---|
| Ft. Lauderdale, FL – Sept. 13, 2011 | | | |

For a list of other locations and hotel information, please visit our website: **www.polaris-group.com**

### PLEASE PRINT CLEARLY Fax back at 1-866-504-3087

| Attendee(s) Name(s): | | Title: | |
|---|---|---|---|
| Email Address *Required*: | | | |
| Facility: | | | |
| Chain Affiliation: | | | |
| Phone: | Fax: | | |
| Method of Payment | ☐ Check  ☐ Visa  ☐ AMEX  ☐ MasterCard | | |
| Credit Card #: | # 3-Digit Code: | Exp. Date: | |

*Credit Card charges will appear on your Statement as "Polaris Group"*

*Total Charges due:*   $

| Name (as it appears on card): | | | |
|---|---|---|---|
| Billing Address: | | | |
| City: | State: | Zip: | |
| Signature: | | | |

Cancellation Policy: No cancellation or refunds upon receipt of handouts and call-in number via email or fax.

**Polaris Group 3030 N. Rocky Point Drive, Suite 240 Tampa, FL 33607**

To be removed from our fax list, please call 1-800-404-2972 and follow the prompts or fax to 1-813-886-6045.

Exhibit 2
16

7/27/11 11:33          8138865045          Pines Nursing Home          □ 1/1

 **POLARISGROUP**   **PUBLIC SEMINARS**    Rehab Care

### Managing Medicare Revenue in Changing Times
### Strategies for Oct. 1, 2011 Changes
### Compliance, Reimbursement, & Trending Medicare Utilization Under RUG-IV

**OVERVIEW:**

Just as SNFs were starting to manage Medicare revenue under RUG-IV, CMS proposes significant changes effective Oct. 1, 2011. Staff must now implement different strategies for End of Therapy (EOT), Start of Therapy (SOT), and the new Change in Therapy (COT) MDS requirements. Combined with the new definition of Group Therapy and changes in taxes; staff behaviors and systems must change to mitigate revenue loss. This training provides best practices for your daily MDS & Medicare operations, essential for success. How to maintain productivity and profitability is essential. This dynamic training reviews complicated COT and EOT scenarios, billing tips, analysis of your daily operations, as well as, financial and utilization trends under RUG-IV.

This multi-speaker seminar will help you:
* Prepare for and implement changes effective Oct 1 2011
* Retain/Improve Medicare Part A Revenue.
* Change behaviors to decrease need to complete and EOT or COT.
* Improve Accuracy of Submitted Claims.
* Learn RUG-IV Utilization Trends and anticipate changed under new rates.
* Mitigate Therapy Challenges

**Hotel Information:** (mention RehabCare Group Road Show for room discount)

Sheraton Ft. Lauderdale Airport | 1825 Griffin Road, Dania, FL 33004 | 800.325.3535

#### PLEASE LIST HOW MANY PEOPLE ARE ATTENDING:

| | $99.00 per person | # of Attendees | |
|---|---|---|---|
| Ft. Lauderdale, FL – Sept. 13, 2011 | | | |

For a list of other locations and hotel information, please visit our website: www.polaris-group.com

#### PLEASE PRINT CLEARLY Fax back at 1-866-504-3087

| Attendee(s) Name(s): | Title: |
|---|---|

Email Address *Required*: _____

Facility: _____
Chain Affiliation: _____

Phone: _____   Fax: _____

Method of Payment:  ☐ Check   ☐ Visa   ☐ AMEX   ☐ MasterCard

Credit Card #: _____   * 3-Digit Code: _____   Exp. Date: _____

*Credit Card charges will appear on your Statement as "Polaris Group"*

Total Charges due: $ _____

Name (as it appears on card): _____

Billing Address: _____

City: _____   State: _____   Zip: _____

Signature: _____

Cancellation Policy: No cancellation or refunds upon receipt of handouts and call-in number via email or fax.

**Polaris Group 3030 N. Rocky Point Drive, Suite 240 Tampa, FL 33607**

To be removed from our fax list, call 1-800-404-2972 and follow the prompts or fax us at 813-886-6045

Exhibit 3
17

8/3/11 13:09          8138866045          Pines Nursing Home          ☐ 1/1

 **POLARIS GROUP**    **PUBLIC SEMINARS**     **RehabCare**

### Managing Medicare Revenue in Changing Times
#### Strategies for Oct. 1, 2011 Changes
#### Compliance, Reimbursement, & Trending Medicare Utilization Under RUG-IV

**OVERVIEW:**

Just as SNFs were starting to manage Medicare revenue under RUG-IV, CMS proposes significant changes effective Oct. 1, 2011. Staff must now implement different strategies for End of Therapy (EOT), Start of Therapy (SOT), and the new Change in Therapy (COT) MDS requirements. Combined with the new definition of Group Therapy and changes in rates; staff behaviors and systems must change to mitigate revenue loss. This training provides best practices for your daily MDS & Medicare operations, essential for success. How to maintain productivity and profitability is essential. This dynamic training reviews complicated COT and EOT scenarios, billing tips, analysis of your daily operations, as well as, financial and utilization trends under RUG-IV.

This multi-speaker seminar will help you:

* Prepare for and implement changes effective Oct 1 2011
* Retain/Improve Medicare Part A Revenue.
* Change behaviors to decrease need to complete and EOT or COT.
* Improve Accuracy of Submitted Claims.
* Learn RUG-IV Utilization Trends and anticipate changed under new rates.
* Mitigate Therapy Challenges

**Hotel Information:** (mention RehabCare Group Road Show for room discount)

**Sheraton Ft. Lauderdale Airport | 1825 Griffin Road, Dania, FL 33004 | 800.325.3535**

PLEASE LIST HOW MANY PEOPLE ARE ATTENDING:

| Ft. Lauderdale, FL – Sept. 13, 2011 | 199.00 per person | # of Attendees |
|---|---|---|

**SCHEDULE**
Registration: 8:30 –9:00 a.m.
Session: 9:00 a.m. -4:30 p.m. (Lunch Included)

For a list of other locations and hotel information, please visit our website: www.polaris-group.com

PLEASE PRINT CLEARLY Fax back at 1-866-504-3087

Attendee(s) Name(s): _____   Title: _____

Email Address *Required*: _____

Facility: _____
Chain Affiliation: _____

Phone: _____   Fax: _____
Method of Payment:   ☐ Check   ☐ Visa   ☐ AMEX   ☐ MasterCard
Credit Card #: _____   * 3-Digit Code: _____   Exp. Date: _____

*Credit Card charges will appear on your Statement as "Polaris Group"*

Total Charges due: $ _____

Name (as it appears on card): _____

Billing Address: _____

City: _____   State: _____   Zip: _____

Signature: _____

Cancellation Policy: No cancellation or refunds upon receipt of handouts and call-in number via email or fax.

**Polaris Group 3030 N. Rocky Point Drive, Suite 240 Tampa, FL 33607**

To be removed from our fax list, please call 1-800-404-2972 and follow the prompts or fax to 1-813-586-6045.

**Exhibit 4**
18

8/10/11 12:37          8138866845          Pines Nursing Home          1/1

 POLARIS GROUP    **PUBLIC SEMINARS**    

### Managing Medicare Revenue in Changing Times
#### Strategies for Oct. 1, 2011 Changes
#### Compliance, Reimbursement, & Trending Medicare Utilization Under RUG-IV

**OVERVIEW:**

Just as SNFs were starting to manage Medicare revenue under RUG-IV, CMS proposes significant changes effective Oct. 1, 2011. Staff must now implement different strategies for End of Therapy (EOT), Start of Therapy (SOT), and the new Change in Therapy (COT) MDS requirements. Combined with the new definition of Group Therapy and changes in rates; staff behaviors and systems must change to mitigate revenue loss. This training provides best practices for your daily MDS & Medicare operations, essential for success. How to maintain productivity and profitability is essential. This dynamic training reviews complicated COT and EOT scenarios, billing tips, analysis of your daily operations, as well as, financial and utilization trends under RUG-IV.

This multi-speaker seminar will help you:

- Prepare for and implement changes effective Oct 1 2011
- Retain/Improve Medicare Part A Revenue.
- Change behaviors to decrease need to complete and EOT or COT.
- Improve Accuracy of Submitted Claims.
- Learn RUG-IV Utilization Trends and anticipate changed under new rates.
- Mitigate Therapy Challenges

**Hotel Information:** (mention RehabCare Group Road Show for room discount)

**Sheraton Ft. Lauderdale Airport | 1825 Griffin Road, Dania, FL 33004 | 800.325.3535**

**PLEASE LIST HOW MANY PEOPLE ARE ATTENDING:**

| | | |
|---|---|---|
| Ft. Lauderdale, FL – Sept. 13, 2011 | $399.00 per person | # of Attendees |

**SCHEDULE**
Registration: 8:30 –9:00 a.m.
Session: 9:00 a.m. -4:30 p.m. (Lunch Included)

For a list of other locations and hotel information, please visit our website: www.polaris-group.com

#### PLEASE PRINT CLEARLY Fax back at 1-866-504-3087

| | |
|---|---|
| Attendee(s) Name(s): | Title: |
| Email Address *Required*: | |
| Facility: | |
| Chain Affiliation: | |
| Phone: | Fax: |
| Method of Payment: ☐ Check   ☐ Visa   ☐ AMEX   ☐ MasterCard | |
| Credit Card #: | * 3-Digit Code:   Exp. Date: |

*Credit Card charges will appear on your Statement as "Polaris Group"*

*Total Charges due:* $

| | |
|---|---|
| Name (as it appears on card): | |
| Billing Address | |
| City: | State:   Zip: |
| Signature: | |

Cancellation Policy: No cancellation or refunds upon receipt of handouts and call-in number via email or fax.

**Polaris Group 3030 N. Rocky Point Drive, Suite 240 Tampa, FL 33607**

To be removed from our fax list, please call 1-800-404-2972 and follow the prompts or fax to 1-813-886-6045.

**Exhibit 5**

19

 **POLARIS GROUP** **PUBLIC SEMINARS** 

### Managing Medicare Revenue in Changing Times
### Strategies for Oct. 1, 2011 Changes
## Compliance, Reimbursement, & Trending Medicare Utilization Under RUG-IV

**OVERVIEW:**

Just as SNFs were starting to manage Medicare revenue under RUG-IV, CMS proposes significant changes effective Oct. 1, 2011. Staff must now implement different strategies for End of Therapy (EOT), Start of Therapy (SOT), and the new Change in Therapy (COT) MDS requirements. Combined with the new definition of Group Therapy and changes in rates; staff behaviors and systems must change to mitigate revenue loss. This training provides best practices for your daily MDS & Medicare operations, essential for success. How to maintain productivity and profitability is essential. This dynamic training reviews complicated COT and EOT scenarios, billing tips, analysis of your daily operations, as well as, financial and utilization trends under RUG-IV.

This multi-speaker seminar will help you:

* Prepare for and implement changes effective Oct 1 2011
* Retain/Improve Medicare Part A Revenue.
* Change behaviors to decrease need to complete and EOT or COT.
* Improve Accuracy of Submitted Claims.
* Learn RUG-IV Utilization Trends and anticipate changed under new rates.
* Mitigate Therapy Challenges

**Hotel Information:** (mention RehabCare Group Road Show for room discount)

**Sheraton Ft. Lauderdale Airport | 1825 Griffin Road, Dania, FL 33004 | 800.325.3535**

**PLEASE LIST HOW MANY PEOPLE ARE ATTENDING:**

| Ft. Lauderdale, FL – Sept. 13, 2011 | $99.08 per person | # of Attendees |
|---|---|---|
| | | |

**SCHEDULE**
Registration: 8:30 –9:00 a.m.
Session: 9:00 a.m. -4:30 p.m. (Lunch included)

For a list of other locations and hotel information, please visit our website: www.polaris-group.com

**PLEASE PRINT CLEARLY Fax back at 1-866-504-3087**

| Attendee(s) Name(s): | Title: |
|---|---|

Email Address *Required*:

Facility:
Chain Affiliation:

Phone:                    Fax:
Method of Payment:  ☐ Check   ☐ Visa   ☐ AMEX   ☐ MasterCard
Credit                                        * 3-Digit          Exp.
Card #:                                       Code:            Date:

*Credit Card charges will appear on your Statement as "Polaris Group"*

*Total Charges due:* $

Name (as it appears on card):

Billing Address

City:                    State:          Zip:

Signature:

Cancellation Policy: No cancellation or refunds upon receipt of handouts and call-in number via email or fax.

**Polaris Group 3030 N. Rocky Point Drive, Suite 240 Tampa, FL 33607**

To be removed from our fax list, please call 1-800-404-2972 and follow the prompts or fax to 1-813-586-6946.

**Exhibit 6**
**20**

8/31/11 12:56          8138866045          Pines Nursing Home          ☐ 1/1

 **POLARIS GROUP**     **PUBLIC SEMINARS**     

### Managing Medicare Revenue in Changing Times
### Strategies for Oct. 1, 2011 Changes
### Compliance, Reimbursement, & Trending Medicare Utilization Under RUG-IV

**OVERVIEW:**

Just as SNFs were starting to manage Medicare revenue under RUG-IV, CMS proposes significant changes effective Oct. 1, 2011. Staff must now implement different strategies for End of Therapy (EOT), Start of Therapy (SOT), and the new Change in Therapy (COT) MDS requirements. Combined with the new definition of Group Therapy and changes in rates; staff behaviors and systems must change to mitigate revenue loss. This training provides best practices for your daily MDS & Medicare operations, essential for success. How to maintain productivity and profitability is essential. This dynamite training reviews complicated COT and EOT scenarios, billing tips, analysis of your daily operations, as well as, financial and utilization trends under RUG-IV.

**This multi-speaker seminar will help you:**

- Prepare for and implement changes effective Oct 1 2011
- Retain/Improve Medicare Part A Revenue.
- Change behaviors to decrease need to complete and EOT or COT.
- Improve Accuracy of Submitted Claims.
- Learn RUG-IV Utilization Trends and anticipate changed under new rates.
- Mitigate Therapy Challenges

**Hotel Information:** (mention RehabCare Group Road Show for room discount)

**Sheraton Ft. Lauderdale Airport | 1825 Griffin Road, Dania, FL 33004 | 800.325.3535**

PLEASE LIST HOW MANY PEOPLE ARE ATTENDING:

| Ft. Lauderdale, FL – Sept. 13, 2011 | $99.00 per person | # of Attendees | |
|---|---|---|---|

**SCHEDULE**
Registration: 8:30 –9:00 a.m.
Session: 9:00 a.m. -4:30 p.m. (Lunch included)

For a list of other locations and hotel information, please visit our website: www.polaris-group.com

### PLEASE PRINT CLEARLY Fax back at 1-866-504-3087

Attendee(s) Name(s): _____   Title: _____

Email Address
*Required*: _____

Facility:
Chain
Affiliation: _____

Phone: _____   Fax: _____
Method of
Payment:  ☐ Check   ☐ Visa   ☐ AMEX   ☐ MasterCard
Credit
Card #: _____   * 3-Digit Code: _____   Exp. Date: _____

*Credit Card charges will appear on your Statement as "Polaris Group"*

Total Charges due: $ _____

Name (as it appears on card): _____

Billing Address _____

City: _____   State: _____   Zip: _____
Signature: _____

**Cancellation Policy:** No cancellation or refunds upon receipt of handouts and call-in number via email or fax.

**Polaris Group 3030 N. Rocky Point Drive, Suite 240 Tampa, FL 33607**

To be removed from our fax list, please call 1-800-404-2972 and follow the prompts or fax to 1-813-886-6045.

Exhibit 7



# MEDICARE TRAINING WORKSHOP FOR LTC

This 3-day workshop offers comprehensive training needed to successfully implement a Medicare program which achieves compliance and accurate payment. *This workshop is being offered in 4 convenient locations across the country.*

The Medicare Training Workshop covers numerous topics including eligibility requirements, skilled coverage, MDS/PPS/RUGs, Part B programming, Part A and Part B billing, compliance, QA oversight, proper notices, and appeals.

You will receive a comprehensive training manual that can be used as a resource in your facility as well as forms and procedures on CD which allows you to customize to fit your operational needs. *20 CECs provided.*

Go to www.polaris-group.com for full agenda and to register online.

Brief overview of topics covered during 3-day workshop:



**Why THIS training is one of the best investments you can make this year!**

- **Intensive learning format** – After a review of the rules, we then interpret the rules and provide detailed, step-by-step implementation with procedures/forms to ensure compliance or optimal revenue.

- **Small class size** – With a smaller group, more interactive activities are provided with all questions answered to ensure optimal learning experience.

- **Program Manual and CD** – Each attendee receives a program training manual which includes all training materials, small group activities, and sample procedures and forms. In addition, various forms and procedures will also be provided on CD to implement back at your SNF.

- **Create your own personal "to do" list** – For each covered area, we will work together to identify areas for improvement needed in your SNF and help you create a priority "to do" list of needed enhancements to your program.

- **Polaris Group Experience** – Polaris Group has been an established expert in Medicare compliance and best practices for over 20 years.

*To be removed from our fax list, please call 1-800-404-2972 and follow the prompts*

Exhibit 8

21



# MEDICARE TRAINING
# WORKSHOP FOR LTC

### Course Fee is $929/per person
($100 discount if registered 30 days prior to date of workshop - Discounted rate only $829 per person)
This fee includes 3 days of training workshop and training manual with CD.

Group Discount: After the first two registrants pay the usual fee; any additional registrants (3rd, 4th, 5th etc.) from
the same location have a $100 discount applied to each additional registrant.
Please call 1-800-275-6252 ext 233 for more information.

### Your Choice of Date/Location:

| ☐ | September 18 – 20 |

All class times are 8:30am to 5:00pm          Refreshments are provided; meals are on your own.

Hotel Information: All hotel information is provided on our website. Polaris Group has secured a limited number of
rooms at a discounted rate. Please make your own hotel reservations by using the links provided on our website.

Go to www.polaris-group.com for full agenda and to register online

### PLEASE PRINT CLEARLY

Contact Person: _____ Title: _____
Email Address
*Required*: _____
Facility: _____
Chain
Affiliation: _____
Address: _____
City: _____ State: _____ Zip: _____
Phone: _____ Fax: _____
Method of
Payment:    ☐ Check    ☐ Visa    ☐ AMEX    ☐ MasterCard
                                     * 4 or 3-
Credit                               Digit                          Exp.
Card #:                              Code:                         Date:

                                        Number of attendees
Date of registration_____  $100 Discount applied (if applicable) _____
                                     *Total Charge to Card:*  $ _____
Names/Titles of attendees *Required*: _____
_____
_____

Name (as it appears on card): _____
Billing Address _____
City: _____ State: _____ Zip: _____
Signature: _____

Refund/Cancellation Policy: (all refund requests required in writing)
Please refer to our website for complete refund policy information

Exhibit 8
22

01-02-2013 11:16     8138866045          Pines Nursing Home          ₱ 1/1

**POLARIS GROUP**

# Interim MDS Coordinators Available NOW!

## Interim MDS Coordinator Services

Polaris Group offers short-term placements that cater to your needs whether it be 5 days, 5 weeks, 5 months...

The experienced Resident Assessment Coordinator will jump right into completing MDSs, CAAs, and Care Plans per CMS guidelines.

Based on your analysis of staff and needs the Polaris Group Interim MDS Associate:

- Provide overall leadership in scheduling MDSs to get back into compliance and/or maintain compliance.
- Complete a line of Medicare MDSs, CAAs and Care Plans, as indicated by provider needs.
- Coordinate the assessment process with other care team members.
- Assist in identifying triggers for Medicare/Medicaid reimbursement.
- Work in conjunction with the Part A claims to communicate this with the billing staff.

Polaris Group, a nationally recognized consulting firm, has been assisting post-acute health care providers for 23 years.

# Don't get behind on your MDS - if you need an MDS Coordinator, call now.

## Call Now.

**Call Polaris Group TODAY for Interim MDS placement!**

**800-275-6252 X237**

www.polaris-group.com

To be removed from our fax list, please call 1-800-404-2972 and follow the prompts or fax us at 813-886-6045

*Remove US.*

Exhibit 9

23